IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SANDRA STORTO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 05 C 7022 |
| ) | |
| KRAFT FOODS GLOBAL, INC., ) | HONORABLE CHARLES R. NORGLE |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

CHARLES R. NORGLE, District Judge

Before the court is Defendant's Motion for Summary Judgment brought pursuant to Federal Rule of Civil Procedure 56(c). For the following reasons, Defendant's Motion for Summary Judgment is granted.

**I. BACKGROUND**[1]

**A. Facts**

This case arises out of Defendant Kraft Foods Global, Inc.'s ("Kraft") denial of severance pay to Plaintiff Sandra Storto ("Storto"). Storto began her employment at Kraft in 1985 as a legal secretary. After a few years at Kraft, Storto became a salaried legal assistant in the trademark group of Kraft's law department. While employed at Kraft, Storto contributed to a Severance Pay Plan (the "Plan") for salaried employees, subject to the Employee Retirement

---

[1] The court takes the undisputed facts from the parties' Local Rule 56.1 Statements, and notes disputed facts within the text.

1

Income Security Act ("ERISA").

Kraft claims that during Storto's employment, she generally received favorable performance reviews. However, in May 2003, Storto received a written warning regarding her performance. In September 2003, Storto received an "unacceptable" performance rating and was placed on a formal "Performance Improvement Plan." Finally, in October 2003, she received a final written warning from her supervisor, Douglas Cherry ("Cherry"). In this warning to Storto, Cherry indicated that she had demonstrated a "failure to properly maintain the Trademark Registration Files" within the department.

On January 15, 2004, Storto found a trademark document that had been requested of her for some time. According to Kraft, there were circumstances which led the company to suspect that Storto had manufactured a facsimile of this document, rather than actually having found the original document. As a result, various Kraft attorneys and Human Resources personnel searched Storto's trash can by her desk. This seach yielded scraps of paper, which led Kraft to the conclusion that Storto had fraudulently re-created the missing document by cutting and pasting portions of other documents together.

As a result, Cherry sent Storto a letter terminating her employment at Kraft because she had "committed an intolerable act of misconduct when she falsified Trademark Office legal documents." Additionally, Cherry's letter outlined Storto's 2003 performance evaluations and discipline.

Then, on February 25, 2004, Storto submitted a written claim for severance pay under the Plan. On March 8, 2004, Kraft's Benefits Department sent Storto a letter in which it denied her claim for severance pay, on the grounds that she was ineligible. Specifically, the denial letter

stated that her pay was denied because Storto's termination was the result of her own actions, not Kraft's. As a result of this letter, Storto informed the Benefits Department of her intent to appeal the denial of benefits, through a letter drafted by her attorney. Included in this letter was a request for all relevant information Kraft possessed that related to Storto's termination. On April 22, 2004, in response to this letter, Jill Smith ("Smith"), the Secretary to the Administrative Committee sent Storto's personell file to Storto's attorney. However, Storto did not receive a copy of the allegedly forged document.

### B. Procedural History

On June 29, 2004, the Administrative Committee provided Storto with written notice of its decision to deny her appeal. Then, on August 26, 2005, Storto filed her complaint alleging violations of ERISA and a breach of contract under Illinois state law in the Circuit Court of Cook County, in Chicago, Illinois. On December 13, 2005, Kraft removed the case to the United States District Court for the Northern District of Illinois.

On July 26, 2005, Kraft filed its Motion for Summary Judgment. Storto filed her Response on September 8, 2006, and on October 5, 2006, Kraft filed its Reply. The Motion for Summary Judgment is fully briefed and before the court.

## II. DISCUSSION

### A. Standard of Review

#### 1. *Motions for Summary Judgment*

Summary judgment is permissible when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The nonmoving party cannot rest on the pleadings alone, but must identify specific facts, see Heft v.

Moore, 351 F.3d 278, 283 (7th Cir. 2003), that raise more than a mere scintilla of evidence to show a genuine triable issue of material fact. See Szymanski v. Rite-Way Lawn Maintenance Co., 231 F.3d 360, 364 (7th Cir. 2000); see also Vukadinovich v. Bd. of Sch. Tr.'s of North Newton School, 278 F.3d 693, 699 (7th Cir. 2002).

In deciding a motion for summary judgment, the court can only consider evidence that would be admissible at trial under the Federal Rules of Evidence. See Stinnett v. Iron Works Gym/Executive Health Spa, Inc., 301 F.3d 610, 613 (7th Cir. 2002). The court views the record and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party. See FED. R. CIV. P. 56(c); see also Koszola v. Bd. of Educ. of City of Chicago, 385 F.3d 1104, 1108 (7th Cir. 2004). "In the light most favorable" simply means that summary judgment is not appropriate if the court must make "a choice of inferences." See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); see also First Nat'l Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 280 (1968); Spiegla v. Hall, 371 F.3d 928, 935 (7th Cir. 2004). The choice between reasonable inferences from facts is a jury function. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

When a party moves for summary judgment, the court must view the record and all inferences in a light most favorable to the non-moving party. Ameritech Benefit Plan Comm. v. Communication Workers of Am., 220 F.3d 814, 821 (7th Cir. 2000). However, the inferences construed in the non-moving party's favor must be drawn from specific facts identified in the record that support that party's position. See Szymanski, 231 F.3d at 364. Under this standard, "[c]onclusory allegations alone cannot defeat a motion for summary judgment." Thomas v. Christ Hospital and Medical Center, 328 F.3d. 890, 892-93 (7th Cir. 2003) (citing Lujan v. Nat'l

4

Wildlife Federation, 497 U.S. 871, 888-89 (1990)).

### 2. *Review of Denial of ERISA Benefits*

The district court reviews the denial of ERISA benefits under the *de novo* standard "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Sperando v. Lorillard Tobacco Co., Inc., 460 F.3d 866, 870 (7th Cir. 2006) (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)). In other words, if the plan gives discretion to the administrator to review the denial of ERISA benefits, then the court reviews the decision under the "arbitrary and capricious" standard. See Hess v. Reg-Ellen Mach. Tool Corp., 423 F3.d 653, 658 (7th Cir. 2005). The Seventh Circuit has "emphasized that the default standard of review is de novo" and that, in order to alter this default standard, the "stipulation [for deferential review] must be clear." Sperando, 460 F.3d at 870. Defendants have the burden to establish that the "language of the plan gives it discretionary authority to award benefits." Sperando, 460 F.3d at 870. With these principles in mind, we turn to Kraft's Motion for Summary Judgment.

### B. Kraft's Motion for Summary Judgment

#### 1. *Kraft's Denial of Storto's Benefits is reviewed de novo*

As a threshold matter, the court finds that the proper standard of review of Storto's denial of benefits is de novo. First, there are contradictory sections in the Plan description that concern the denial of severance pay. Section 6.10 of the Plan gives the Administrative Committee "complete discretionary authority to interpret and construe the provisions of the Plan . . . ." However, Section 4.4 and Subsection 4.4(b) of the Plan give sole discretion to the employer, Kraft. Specifically, Subsection 4.4(b) states:

5

> An Employee shall be ineligible for severance pay under this Plan if [Kraft], in its sole discretion, determines that . . . the Employee was discharged for cause, including unacceptable performance or unsatisfactory conduct, which determination shall be the sole discretion of [Kraft].

Def.'s Stmt. of Mat. Facts, Ex. B, at 2. This conflict between the two sections is highlighted by various letters Kraft sent to Storto. In these letters, Kraft, not the Administrative Committee, had made the decision to deny Storto's severenace pay. In the letter to Storto's attorney dated April 22, 2004, Kraft stated that the initial denial of the claim was based on "Kraft Foods' determination that Storto was discharged due to unacceptable performance or unsatisfactory conduct." Additionally, in the June 29, 2004 letter to Storto, Kraft stated that the final denial of severance pay was based on "Kraft Foods' determination that [she] was discharged from employment for cause." When Storto's counsel sent the Administrative Committee letters regarding this case, all responses by Kraft were written on Kraft Letterhead. As a result, it is not clear as to whether Kraft or the Administrative Committee had the authority to grant or deny Storto severance pay under the ERISA plan. Because of this inconsistency, the court will review the denial of Storto's benefits under the *de novo* standard. See Schwartz v. Prudential Ins. Co., 450 F.3d 697 (7th Cir. 2006).

### *a. Under the De Novo Review, Kraft correctly denied Storto's benefits*

Kraft denied Storto her severance pay under the Plan because it found that Storto had "committed an intolerable act of misconduct when [she] falsified Trademark Office legal documents." Def.'s Stmt. of Mat. Facts, ¶ 20. Under the terms of the Plan, an employee is only eligible for severance pay if Kraft, "in its sole discretion, determines that . . . the Employee's employment with the Company was terminated through no fault of the Employee by: (i)

permanent reduction in the Company's work force; or (ii) permanent shutdown of a plant, department or subdivision; or (iii) job elimination." Id. ¶ 11.

According to Kraft, Storto's termination did not fall under any of these categories. Specifically, Storto was for fired her falisifaction of a Trademark Document, an act Kraft considered "intolerable." Jill Smith ("Smith"), the Benefits Compliance Manager at Kraft stated that Storto's termination was for cause, and based on "specific terms of the Severance Plan, which provides that 'an Employee shall be ineligible for severance pay under this Plan if [Kraft] in its sole discretion, determines that . . . the Employee was discharged for . . .unsatisfactory conduct." Def.'s Stmt. of Mat. Facts, Ex. F.

Kraft found that Storto's actions of January 15, in which she falsified Trademark documents constituted gross minsconduct, and that under the terms of the Plan, this was sufficient to terminate her employment. Furthermore, because Storto's termination did not fall under any of the three exemptions in which she could be awarded severance pay, Kraft was correct to withhold any severance pay otherwise owed to Storto.

### b. *Storto does not refute Kraft's allegations of misconduct*

The court also notes that Storto offers no evidence to rebut Kraft's claim that she committed misconduct by falsifying Trademark Office documents. Storto's only response is that she was not provided a copy of the allegedly falsified documents, and as a result, cannot adequatly respond to these claims. However, the reason provided for her termination was misconduct, stemming not only from the one instance of January 15, 2004, but for Storto's inability to properly maintain files in the legal department, and Kraft's numerous repremands

made on the issue. Therefore, the court finds that Kraft's decision was valid, and that the denial of Storto's benefits was proper, as within the terms of the Plan.

### 2. *Storto is not entitled to statutory penalties under ERISA*

Storto also alleges that pursuant to § 502 of ERISA, "Kraft should be assessed a $100.00 per day fee in favor of [Plaintiff] for failure to provide" documents related to her termination from the company. However, Section 1132(c)(1) of ERISA provides that:

> Any administrator . . . (B)who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal.

29 U.S.C. § 1132(c)(1). Storto made her claim for the statutory penalty against Kraft. Rather, "the request should have been made against [the Plan] as Plan Administrator." See Kamler v. H/N Telecommunication Services, Inc., 305 F.3d 672, 683(7th Cir. 2002). As a result, Storto's claim under § 1132(c)(1) fails as a matter of law.

### 3. *The court relinquishes jurisdiction on the state law claim*

Because the court has granted summary judgment on Storto's ERISA claims, there is no longer subject matter jurisdiction on the remaining state law claim for breach of contract. As a result, the court relinquishes jurisdiction on Count III of Storto's Amended Complaint.

## III. CONCLUSION

For the foregoing reasons, the court grants Defendant's Motion for Summary Judgment.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge

United States District Court

DATED: 2-22-07